FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JORDAN J.,<br><br>      Plaintiff,<br><br> v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>      Defendant. | NO: 4:23-CV-005027-LRS<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' briefs.  ECF Nos. 10, 14.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this suit.

ORDER - 1

attorney Chad Hatfield.  Defendant is represented by Special Assistant United States

Attorney Jacob Phillips.  The Court, having reviewed the administrative record and

the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's

Brief, [2] ECF No. 10, is denied and Defendant's Brief, ECF No. 14, is granted.

## JURISDICTION

An application for supplemental security income (SSI) was filed on behalf of

Jordan J., [3] an individual under the age of 18, on March 26, 2018, and alleged an

onset date of April 3, 2004.  Tr. 134-39.  Benefits were denied initially, Tr. 82-85,

and upon reconsideration, Tr. 89-92.  On May 6, 2020, Plaintiff's mother appeared

at a hearing before an administrative law judge (ALJ).  Tr. 30-52.  On June 1, 2020,

the ALJ issued an unfavorable decision, Tr. 10-25, and the Appeals Council denied

review.  Tr. 1-6.  Plaintiff filed a complaint in the United States District Court for

the Eastern District of Washington, Tr. 755-57, and on March 21, 2022, pursuant to

the stipulation of the parties, the United States Magistrate Judge James Goeke

---

[2] Plaintiff's brief is labeled as a Motion for Summary Judgment.  ECF No. 10.  The

supplemental rules for Social Security actions under 42 U.S.C. § 405(g) went into

effect on December 1, 2022; Rule 5 and Rule 6 state the actions are presented as

briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

[3] The court identifies a plaintiff in a social security case only by the first name and

last initial in order to protect privacy.  *See* LCivR 5.2(c).

reversed the ALJ's decision and remanded the matter to the Commissioner for further administrative proceedings.  Tr. 760-65.  On December 1, 2022, Plaintiff appeared at a second hearing, Tr. 720-32, and on December 22, 2022, the ALJ issued another unfavorable decision.  Tr. 689-719.  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 16 years old at the time of the first hearing.  Tr. 47.  Plaintiff's mother testified at the first hearing that Plaintiff had not been doing well in school for the previous few years.  Tr. 35.  He missed two to four days of school per week due to depression.  Tr. 35-36.  He was not motivated and did not feel like getting out of bed.  Tr. 36.  According to Plaintiff's mother, he did not care when she restricted him or took away privileges in an attempt to motivate him.  Tr. 36-37.  He spent more than fifty percent of the time in his room.  Tr. 37.  When he was depressed, he would lie in bed or on the couch, have headaches, keep to himself, and would not play video games or watch television.  Tr. 38.  He needed constant reminders and supervision to complete tasks.  Tr. 41.  Plaintiff's mother has called crisis response a few times because Plaintiff was cutting himself or feeling suicidal.  Tr. 38.  He had

urine tests which were positive for marijuana. Tr. 39-40. Sometimes he would miss school due to headaches. Tr. 45. Eventually Plaintiff was homeschooled. Tr. 45.

At the second hearing, Plaintiff acknowledged his mental health functioning had improved and requested a closed period ending on August 3, 2021, before Plaintiff turned age 18. Tr. 724-25. Plaintiff testified that he used marijuana on the weekends for about two months in 2020 but has since stopped. Tr. 726. His depression was so bad that sometimes he could not do his homeschool work. Tr. 727. He denied thoughts of self-harm. Tr. 727. His attitude improved when he started Wellbutrin and he connected with a new counselor. Tr. 728. His bad days decreased to about once a month, but he was able to keep up with his classes. Tr. 729. He graduated from high school and at the time of the hearing, he was working 13-20 hours per week at Dollar Tree. Tr. 730.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**THREE-STEP PROCESS FOR EVALUATING CHILD DISABILITY**

To qualify for Title XVI supplemental security income benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The

regulations provide a three-step process to determine whether a claimant satisfies the above criteria.  20 C.F.R. § 416.924(a).

First, the ALJ must determine whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(b).  Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations."  20 C.F.R. § 416.924(c).  Finally, if the ALJ finds a severe impairment, she must then consider whether the impairment "meets or medically equals" or if it "functionally equals" a disability listed in the Listing of Impairments.  20 C.F.R. § 416.924(d).

If the ALJ finds that the child's impairment or combination of impairments does not meet or medically equal a listing, the functional equivalence assessment requires evaluation of the child's functioning in six "domains."  These six domains, which are designed "to capture all of what a child can or cannot do," include:

    (1) Acquiring and using information:
    (2) Attending and completing tasks;
    (3) Interacting and relating with others;
    (4) Moving about and manipulating objects;
    (5) Caring for self; and
    (6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).  An impairment will be deemed to functionally equal a listed impairment if the child's condition results in a "marked" limitations in two domains, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).

An impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities."  20 C.F.R.

§ 416.926a(e)(2)(i).  An "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 26, 2018, the application date.  Tr. 697.  At step two, the ALJ found that from the application date through April 2, 2022, Plaintiff had the following severe impairments: depression, anxiety disorder, and attention deficit hyperactivity disorder.  Tr. 697.  At step three, the ALJ found that prior to attaining age 18, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1.  Tr. 698-99.  The ALJ then determined that prior to attaining age 18, Plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of the listings.  Tr. 700.  As a result, the ALJ concluded that Plaintiff was not disabled prior to attaining age 18.  Tr. 709.

The ALJ also found that since attaining age 18, Plaintiff does not have a severe impairment or combination of impairments.  Tr. 709.  As a result, the ALJ concluded that Plaintiff has not been disabled, as defined in the Social Security Act, since March 26, 2018, the date the application was filed.  Tr. 712.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly considered the medical opinion evidence;

2.    Whether the ALJ properly determined Plaintiff's impairments did not meet or medically equal a Listing;

3.    Whether the ALJ properly determined Plaintiff's impairments did not functionally equal a listing;

4.    Whether the ALJ properly considered the symptom testimony; and

5.    Whether the ALJ properly considered the lay witness statements.

ECF No. 10 at 2.

## DISCUSSION

**A.    Medical Opinion – Angela Hamel, ARNP**

Plaintiff contends the ALJ failed to properly consider the opinion of Angela Hamel, ARNP. ECF No. 10 at 8-11. In March 2020, Ms. Hamel completed a medical report form and opined that Plaintiff had marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for yourself, and health and physical well-being. Tr. 663-65.

For claims filed on or after March 27, 2017, the regulations provide that the ALJ will not "give any specific evidentiary weight…to any medical

opinion(s)…" *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 416.920c(a) and (b).  Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 416.920c(b)(2).  The ALJ may, but is not required, to explain how other factors were considered.  20 C.F.R. § 416.920c(b)(2); *see* 20 C.F.R. § 416.920c(c)(1)-(5).

First, as to supportability, the ALJ found Ms. Hamel's opinion is not supported by her exam findings.  Tr. 707.  The more relevant the objective medical evidence and supporting explanations are supporting a medical opinion, the more persuasive the medical opinion will be.  20 C.F.R. § 416.920c(c)(1)-(2).   The ALJ observed that Ms. Hamel's mental status exams revealed mostly normal findings.  Tr. 707.  For example, in August 2020 and January 2021, the ALJ noted Plaintiff's mental status exam was essentially normal.  Tr. 707, 1087, 1244.  Plaintiff cites findings from other appointments and asserts they show Ms. Hamel's opinion is "fully supported."  ECF No. 10 at 10.  However, the records cited by Plaintiff do not undermine the ALJ's conclusion.  ECF No. 10 at 10 (citing Tr. 621, 627, 650, 1094, 1082, 1086).  For example, Plaintiff cites Ms. Hamel's October 2020 record

indicating Plaintiff's appearance was "disheveled" and he had poor eye contact, but Plaintiff reported he was doing better, was not anxious or depressed, and there were no concerns.  Tr. 1082.  Other records cited by Plaintiff are from other providers and do not speak to the ALJ's determination that Ms. Hamel's opinion is not supported by her own findings.  ECF No. 10 at 9-10 (citing Tr. 408-09, 417-22).  The ALJ's finding is supported by substantial evidence.

Second, as to consistency, the ALJ found Ms. Hamel's opinion is inconsistent with other evidence in the record.  Tr. 707.  The more consistent a medical opinion is with other evidence from other medical and nonmedical sources in the record, the more persuasive the opinion will be.  20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ observed that Ms. Hamel's opinion is inconsistent with teacher questionnaires that indicate Plaintiff had no limitation in acquiring and using information.  Tr. 707 (citing Tr. 151, 199).  Additionally, the ALJ found Ms. Hamel's opinion is inconsistent with Plaintiff's hearing testimony that he graduated from high school, obtained a job at Dollar Tree, and never experienced difficulty taking care of his personal hygiene.  Tr. 707, 727, 730.  Plaintiff argues the ALJ "mischaracterized" the teacher questionnaires, ECF No. 10 at 9, but as discussed *infra*, the ALJ's interpretation is reasonable and based on the record.  Substantial evidence supports the ALJ's finding regarding consistency.  There is no error.

**B.    Meets or Medically Equals Listing**

Plaintiff contends the ALJ failed to properly evaluate the Listings and find him disabled for meeting or medically equaling Listing 112.04, 112.06, and 112.11. ECF No. 10 at 11-13. As indicated *supra*, for children, the listings describe "impairments that cause marked and severe functional limitations." 20 C.F.R. § 416.925. In evaluating a disability claim for a minor, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment in the listings. *See* 20 C.F.R. § 416.924(a). If an impairment or combination of impairments meets the duration requirement and meets, medically equals, or functionally equals a listing, the claimant is presumed to be disabled. 20 C.F.R. § 416.924(d). If an impairment does not meet the duration requirement, or does not meet, medically equal, or functionally equals the listings, the claimant is not disabled. 20 C.F.R. § 416.924(d).

Listing 112.04 for minors with depressive, bipolar, and related disorders and Listing 112.06 for minors with anxiety and obsessive-compulsive disorders each have three paragraphs designated A, B, and C. To meet either listing, a mental disorder must satisfy the requirements of both A and B, or both A and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00A2. Listing 112.11 has two paragraphs, A and B, and to meet the listing, a mental disorder must satisfy the requirements of both A and B. The ALJ found that Plaintiff's depression, anxiety, and ADHD did not meet the requirements of the respective Listings. Tr. 698; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.04, 112.06, 112.11.

Plaintiff contends the ALJ erred in evaluating the Listings. A plaintiff is required to demonstrate that he medically equaled each of the individual criteria under a listing in order to demonstrate error. *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013). An ALJ does not have an obligation to discuss medical equivalency sua sponte and does not err in failing to do so when the issue is not raised. *See Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020) (citing *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)). Here, Plaintiff has not attempted to show that he met or equaled any of the relevant Listings by showing he met the criteria of the Listing 112.04, 112.06, or 112.11, nor has he set forth any theory of equivalence.

Instead, Plaintiff generally argues four points: (1) the ALJ did not explain the mild limitation in understanding, remembering, and applying information; (2) the ALJ did not address certain evidence; (3) the ALJ did not discuss the C criteria; and (4) the ALJ should have called a medical expert. ECF No. 10 at 12.

First, contrary to Plaintiff's argument, the ALJ did explain the mild limitation assessed in the functional area of understanding, remembering, and applying information. Tr. 699. The "B" criteria for Listings 112.04, 112.06, and 112.11 lists four areas of mental functioning:

(1) Understand, remember, or apply information;
(2) Interact with others;
(3) Concentrate, persist, or maintain pace;
(4) Adapt or manage oneself.

ORDER - 12

The B criteria is met with an extreme limitation in one area, or a marked limitation in two areas of mental functioning.  The functional area of understanding, remembering, and applying information:

> refers to the abilities to learn, recall, and use information to perform age-appropriate activities.  Examples include: understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing an activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make decisions.  These examples illustrate the nature of the area of mental functioning.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00E1.  The ALJ noted evaluations indicating normal thought process, coherent and concrete thought associations, and good or intact recent and remote memory.  Tr. 699 (citing Tr. 471, 1087).  Thus, the ALJ found a mild limitation in this functional area and provided an explanation based on substantial evidence.  The ALJ did not err in assessing a mild limitation in this area.

Second, without referencing the record, Plaintiff argues the ALJ "failed to address the evidence of self-mutilation, suicidal ideation, frequent absenteeism, and failing grades."  ECF No. 14 at 18.  However, the ALJ acknowledged that Plaintiff alleged disability based in part on those issues and referenced the record regarding such topics.  Tr. 701, 704-05 (citing *e.g.*, Tr. 470, 568, 572).  Thus, the ALJ considered this evidence and Plaintiff's argument is without merit.

Third, without referencing the record, Plaintiff asserts there is "documentation of crisis response episodes and psychiatric hospitalization," and suggests this is relevant to the C criteria of the listings. ECF No. 10 at 12. As noted *supra*, Listings 112.04 and 112.06 require findings meeting the criteria in paragraphs A and B or A and C. The C criteria is used to evaluate mental disorders that are "serious and persistent," which means there is a "medically documented history" of at least two years, with evidence showing ongoing medical and mental treatment and evidence of "marginal adjustment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00G. Marginal adjustment means, "your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." *Id*. This is shown by evidence that changes or increased demands have led to exacerbation of symptoms and deterioration in functioning. *Id*. Plaintiff has not attempted to demonstrate that the C criteria is met or equaled. Even if a psychiatric hospitalization is documented in the record (*see infra*), Plaintiff has not shown that in itself would meet the requirements of the C criteria. Plaintiff's general C criteria argument has no merit.

Fourth, Plaintiff relies on Social Security Ruling (SSR) 17-2p to argue the ALJ should have called a medical expert regarding equivalence. ECF No. 10 at 12. The Ruling provides that if an ALJ believes that the evidence does not reasonably support a finding that the individual's impairment medically equals a listed

impairment, the ALJ is not required to obtain testimony from a medical expert to regarding equivalence. SSR 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017). This is not authority requiring the ALJ to call an expert and there is no error.

## C.    Functionally Equals a Listing

Plaintiff contends the ALJ erred by failing to find that Plaintiff's impairments functionally equal Listing 112.04, 112.06, and 112.11. ECF No. 10 at 13. The functional equivalence assessment requires evaluation of the child's functioning in six domains. The domains are designed "to capture all of what a child can or cannot do," including:

> (1) Acquiring and using information:
> (2) Attending and completing tasks;
> (3) Interacting and relating with others;
> (4) Moving about and manipulating objects;
> (5) Caring for self; and
> (6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). An impairment will be deemed to functionally equal to a listed impairment if the child's condition results in a "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

A "marked limitation" is a limitation that "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

The ALJ found that medical evidence does not support the conclusion that Plaintiff's impairments functionally equaled the listings.  Tr. 701.  The ALJ discussed the record in detail, including April 2018 exam notes from Grace Rueda, M.D. (Tr. 433-35), a May 2018 teacher questionnaire from Corey Heitschmidt (Tr. 150-57), a July 2018 psychiatric evaluation by Benjamin Pe, M.D. (Tr. 469-72), an Individualized Education Program (IEP) forms from November 2018 (Tr. 180-97) and April 2020 (Tr. 666-688), a March 2019 teacher questionnaire from Lorena Hernandez (Tr. 198-205), an April 2020 psychosocial evaluation (Tr. 921-22), and various therapy and treatment notes (Tr. 459-465, 531-33, 563-66, 592, 1029, 1039, 1082, 1086-87, 1242-44).  The ALJ discussed each these records and explained that the findings do not support marked limitations in any of the functional domains.  Tr. 701-06.

Without citing the record, Plaintiff argues the ALJ "skipped [discussing] all of the appointments when he reported suicidal ideation and cutting behaviors, as well as his inpatient hospitalization."  ECF No. 13 at 23.  First, as noted *supra*, the ALJ did not omit discussion of records referencing suicidal ideation and cutting behavior.  Second, although Plaintiff does not cite the record for this argument, his statement of facts references a psychiatric hospitalization "for multiple days due to suicidal thoughts."  ECF No. 10 at 3 (citing Tr. 397-98).  However, the record cited is an "Initial Support Plan" from Lutheran Community Services dated August 15, 2016, which does not reference a hospitalization; in fact, it states there had been no

hospitalization in the past year.  Tr. 397-98.  A later record indicates that on August

15, 2016, Plaintiff was taken to a crisis response unit for suicidal thoughts,[4] Tr. 408,

but there is no record indicating Plaintiff was hospitalized for mental health

concerns.[5]  The ALJ does not err by failing to discuss a hospitalization which is not

part of the record.  Regardless, Plaintiff has not shown how such hospitalization,

even if it was documented in the record, would result in a marked limitation in any

domain, within the definition of the regulations.

Plaintiff asserts the questionnaires completed by his math teacher, Mr.

Heitschmidt, and his science teacher, Ms. Hernandez, in May 2018 and March 2019,

respectively, support his claim.  ECF No. 10 at 13-14.  The ALJ acknowledged that

Mr. Heitschmidt indicated that with regarding to the domain of attending and

completing tasks, Plaintiff had "no problem" to "a very serious problem" in the

various activities of the domain.[6]  Tr. 152, 702.  However, Mr. Heitschmidt also

---

[4] Plaintiff's mother testified at the first hearing that she called crisis response twice

in the previous couple of years.  Tr. 38.

[5] It is unclear to the Court whether the hospitalization referenced was related to the

crisis response calls.  Regardless, Plaintiff has not cited any records indicating any

mental health related hospitalization and the Court finds none in the record.

[6] Mr. Heitschmidt assessed no problem or a slight problem in 10 of the 13 activities

in the domain; he assessed a serious problem in the activities of completing

indicated that Plaintiff did not have any limitation in any of the other functional domains.  Tr. 152-55, 702.  Plaintiff suggests the ALJ misstated Mr. Heitschmidt's questionnaire, ECF No. 10 at 14, but the Court disagrees.

Similarly, the ALJ acknowledged that Ms. Hernandez indicated that Plaintiff had unexcused absences and was chronically tardy.  Tr. 198, 703.  However, as to limitations, Ms. Hernandez indicated "no limitation" to only a "slight problem" in the activities of acquiring and using information and noted that "[m]ost inappropriate behavior is very boy age behavior."  Tr. 199, 703.  In the activities of attending and completing tasks, Ms. Hernandez assessed "no problem" to an "obvious problem," but she opined that it was age appropriate since "[n]inth grade of high school is a difficult adjustment."  Tr. 200, 703.  She also indicated that Plaintiff had "no problem" or only "slight problem" in the activities of the other functional domains.  Tr. 201-03, 704.  The ALJ reasonably concluded that Ms. Hernandez's questionnaire does not support a marked limitation in any domain.  Plaintiff points out Ms. Hernandez mentioned Plaintiff's frequent absenteeism and academic deficits and argues this corresponds to marked limitations in acquiring information and attending and completing tasks.  ECF No. 10 at 14.  This argument is unsupported

---

class/homework assignments and working at a reasonable pace/finishing on time, and a very serious problem in the activity of organizing own things or school materials.  Tr. 152.

by Ms. Hernandez's evaluation and is without merit based on Ms. Hernandez's overall assessment.

Plaintiff also argues that Ms. Hamel's opinion establishes marked limitations. ECF No. 10 at 14. As discussed *supra*, the ALJ reasonably discounted Ms. Hamel's opinion for legally sufficient reasons. Lastly, Plaintiff references 20 C.F.R. 416.926a(e)(2)(iv) and suggests he has a marked limitation in the domain of health and physical well-being based on school absences. ECF No. 10 at 15. Plaintiff has not demonstrated he meets the definition of a marked limitation in that domain by frequency or overall effect. *See* 20 C.F.R.416.926a(e)(2)(iv). The ALJ's finding that Plaintiff's impairments do not functionally equal a listing is supported by substantial evidence and there is no error.

**D.    Symptom Testimony**

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could

reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).

"The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 2017 WL 5180304, at *9 (effective October 25, 2017); 20 C.F.R. § 416.929(c).

The ALJ gave five reasons for finding Plaintiff's allegations inconsistent with the record: (1) they are inconsistent with the objective evidence; (2) they are inconsistent with Plaintiff's reports in the medical record; (3) they are inconsistent with the teacher questionnaires; (4) they are inconsistent with records showing medication and treatment were effective; and (5) they are inconsistent with Plaintiff's abilities. Tr. 706. These are all valid reasons for discounting a claimant's symptom statements. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (indicating that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Burch*, 400 F.3d at 680 (9th Cir. 2005) (indicating minimal objective evidence is a factor which may be relied upon in discounting symptom testimony, although it may not be the only factor); *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995) (indicating contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony); Social Security Ruling 16-3p, 2017 WL 5180304, at *5 (effective October 25, 2017) (indicating the ALJ evaluates a claimant's statements for their consistency, both internally and with other information in the case record).

1       Plaintiff contends the ALJ "made little more than vague assertions," failed to

2  consider the entire record, misrepresented the record, and failed to consider waxing

3  and waning of symptoms.  ECF No. 10 at 17-18.  Plaintiff essentially cites the same

4  evidence and makes the same arguments previously discussed, and for the same

5  reasons, the Court is not persuaded.  To the extent that there is a conflict in the

6  evidence or it could be interpreted differently, the ALJ, not this court, is responsible

7  for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes v.*

8  *Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *see also Richardson v. Perales*, 402 U.S.

9  389, 400 (1971).

10       Plaintiff makes one specific argument, which is that the ALJ erroneously

11  relied on Plaintiff's ability to graduate from high school, get a job, and work part-

12  time.  ECF No. 10 at 18.  Plaintiff observes that these events occurred after the

13  closed period and argues they were not properly considered.  ECF No. 10 at 18.  The

14  ALJ acknowledged that Plaintiff requested a closed period of disability ending

15  August 3, 2021, before Plaintiff attained age 18, and Plaintiff stipulated to medical

16  improvement as of that date.  Tr. 692.  The record and Plaintiff's testimony suggests

17  that he graduated from high school in April 2022 and began working in May 2022,

18  which, as Plaintiff points out, is after the closed period.  Thus, the ALJ should not

19  have considered Plaintiff's ability to work and graduate from high school as

20  inconsistent with his abilities during the alleged period of disability.  However, the

21  ALJ gave other clear and convincing reasons supported by substantial evidence for

discounting Plaintiff's symptom statements, so any error is harmless.  *See Molina*, 674 F.3d at 1115; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004).

**E.    Lay Witness Statements**

Plaintiff contends the ALJ erred by improperly assessing the lay witness statements.  ECF No. 10 at 15-21.  For claims filed on or after March 27, 2017, 20 C.F.R. § 416.9520c describes how an ALJ must evaluate evidence from medical sources and clarifies how an ALJ should evaluate nonmedical lay testimony.  *See* 20 C.F.R. § 416.920c(d).  The regulations indicate ALJs should consider "all of the available evidence" in evaluating the intensity and persistence of symptoms, including evidence from "medical sources and nonmedical sources" about the effect of a claimant's symptoms.  20 C.F.R. § 416.929(c)(1); *see also* SSR 16-3p (requiring ALJs to consider other evidence such as other nonmedical sources to evaluate symptoms).  However, an ALJ is not required to articulate how evidence from nonmedical sources was considered using the requirements applicable to evaluations of medical opinions.  *See* 20 C.F.R. § 416.920c(d).  Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

*1.  Krystal J.*

Plaintiff's mother, Krystal J. completed a statement in November 2022. Tr. 911. She stated that Plaintiff completed the last three years of high school online from home because he struggled to leave the house and missed too many days of school. Tr. 911. She noted he had stopped cutting himself around 2019 and had used marijuana for a short time. Tr. 911. She stated that since the last hearing, Plaintiff had been going to counseling, taking medication, and having less depression. Tr. 911. She indicated he graduated from high school and took on a part time job. Tr. 911. She stated that he still struggled with being disrespectful at times, but it had improved. Tr. 911. He no longer needed reminders to shower or perform hygiene, and she stated that he had improved and did not need disability. Tr. 911.

The ALJ found Ms. J.'s statement to be partially persuasive. Tr. 709. The ALJ found Ms. J.'s implication that Plaintiff was disabled before age 18 to be inconsistent with mental status exams conducted before age 18, noting that he his memory, concentration, and attention were routinely found to be intact and his behavior was routinely noted to be cooperative. Tr. 709 (citing Tr. 433-56, 458, 518-71, 912-36, 1013-52, 1053-1118, 1125-1247). An ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ found the portion of Ms. J.'s statement indicating Plaintiff was no longer disabled to be consistent with Plaintiff's testimony that he had improved, graduated

from high school, and obtained a job.  Tr. 709.  Plaintiff does not specifically

address the ALJ's finding but makes the same general arguments regarding Ms. J.'s

statements as regarding Plaintiff's symptom testimony.  ECF No. 15-18.   The ALJ's

reasoning is specific, germane, and supported by substantial evidence.

### 2.  Ashley M.

A May 2020 statement from a family friend, Ashley M., indicates that during

the three years that she had known Plaintiff, he had gone to crisis response twice for

depression, suicidal thoughts, and self-harm.  Tr. 392.  She stated that she could see

that he had "pretty severe anxiety" and "signs of severe depression."  Tr. 392.  She

noted he missed a lot of school because of the severity of his anxiety and depression.

Tr. 392.  She stated that homeschooling had helped by reducing distraction, but that

isolation had been hard on him.  Tr. 393.  She explained that she had hired him to

walk her dogs two to three times a day and initially he did well, but then he did not

want to get up in the mornings to walk the dogs and complained about walking them

in the afternoon.  Tr. 394.  She stated that, "his disabilities [] prevented him from

having the desire to continue working."  Tr. 393-94.

The ALJ found Ms. M.'s statement is not persuasive.  Tr. 708.  The ALJ

observed that Ms. M. does not have credentials or training to make an assessment

about Plaintiff's disabilities, and therefore found her statement that Plaintiff's

disability prevents him from having the desire to work is not persuasive.  Tr. 708.

The ALJ found that Ms. M.'s observations made from first-hand knowledge are not

inconsistent with the ALJ's findings of less than marked limitations in all functional

domains. Tr. 708. Plaintiff argues generally that Ms. M.'s statement is consistent

with other records cited by Plaintiff, ECF NO. 10 at 19-20, which have already been

discussed throughout this decision. Plaintiff does not address the ALJ's reasoning,

which is specific, germane, and supported by substantial evidence.

### 3. Charles and Kathleen W.

An April 2020 statement submitted by Plaintiff's paternal grandparents,

Charles and Kathleen W., indicates that they had become concerned about Plaintiff's

physical and mental health in the preceding few years. Tr. 388. They noted that

Plaintiff had days when he was extremely sullen and preferred to sleep or just sit and

stare. Tr. 388. When he was upbeat, he would be helpful and engage in intelligent

conversations with excellent vocabulary. Tr. 388. When he was depressed, he

would look droopy and drag himself around and would stop and rest more often

while helping with tasks. Tr. 388. They found it obvious that Plaintiff suffered from

depression and were concerned that he might have chronic fatigue syndrome or

another condition, such as Epstein-Barr, due to his lack of energy and low spirits.

Tr. 388.

The ALJ found the statement of Mr. and Ms. W. is not persuasive. Tr. 708.

The ALJ determined that observations that Plaintiff appeared depressed and lacked

energy were not inconsistent with the finding that Plaintiff has less than marked

limitations. Tr. 708. The ALJ rejected Mr. and Ms. W.'s speculation about chronic

fatigue syndrome, Epstein-Barr, or another condition since they are not qualified to make such diagnoses, and the medical evidence does not support those diagnoses. Tr. 708. Plaintiff argues the ALJ improperly rejected the statement because Mr. and Mrs. W. are not medical sources, ECF No. 10 at 21; however, Plaintiff misunderstands the ALJ's finding. The ALJ appropriately rejected that portion of the Mr. and Ms. W.'s statement suggesting another medical cause for Plaintiff's behavior. The ALJ gave specific, germane reasons for the weight given to the statement and substantial evidence supports the finding.

### 4. Barbara J.

In April 2020, Plaintiff's maternal grandmother, Barbara J., submitted a statement indicating that Plaintiff participates in activities, but sometimes not whole-heartedly. Tr. 389. He is talkative and has a good vocabulary, but sometimes he is quiet, keeps to himself, and does not interact. Tr. 389. He was involved with a youth choir but tried to get out of performances by saying his stomach hurt. Tr. 389. She indicated that being in public is very stressful for him, including school. Tr. 389. She noted he struggled with grades and getting new concepts. Tr. 389. She compared Plaintiff's behavior and feelings to those of her significant other, who suffers from anxiety and depression. Tr. 389.

The ALJ found Ms. J.'s statement is not persuasive. Tr. 708. The ALJ found that Ms. J.'s observations were not inconsistent with the conclusion that Plaintiff has less than marked functional limitations. Tr. 708. The ALJ also noted that Ms. J.'s

statement that Plaintiff has depression and anxiety based on conversations with her significant other is unpersuasive because there is no evidence that either of them is a medical provider qualified to makes such diagnoses.  Tr. 708.  Plaintiff argues the ALJ improperly rejected the statement because Ms. J. is not a medical source, ECF No. 10 at 21; however, Plaintiff misunderstands the ALJ's finding.  The ALJ appropriately rejected that portion of the statement involving medical conclusions Ms. J. and her partner appear unqualified to make.  The ALJ gave specific, germane reasons for the weight given to the statement and substantial evidence supports the finding.

### 5.  Bethany J.

In April 2020, Plaintiff's aunt, Bethany J., submitted a statement indicating her observations related to his depression.  Tr. 391.  She stated that when she would speak with him and ask how he was doing, he would usually say "good" or "okay," but would not openly express why he was just "okay." Tr. 391.  She would typically have to ask leading or suggestive questions about his life and feelings.  Tr. 391.  She never knew whether he was expressing his honest feelings or if he was just being agreeable.  Tr. 391.

The ALJ found Ms. J.'s statement is unpersuasive.  Tr. 708.  The ALJ noted that Ms. J.'s observations and anecdotes are not inconsistent with the finding that Plaintiff has less than marked limitations in all functional domains.  Tr. 708.  The ALJ also observed that the record does not reflect that Ms. J. has training or

ORDER - 28

credentials to make assessments regarding Plaintiff's mental health functioning, and therefore any conclusions by her are not persuasive.  Tr. 708.  Plaintiff argues the ALJ improperly rejected the statement because Ms. J. is not a medical source, ECF No. 10 at 21; however, Plaintiff misunderstands the ALJ's finding.  The ALJ largely acknowledged the content of Ms. J.'s statement and only rejected it to the extent of the assessment of mental health diagnosis or functioning, upon which Ms. J. does not appear qualified to opine.  Tr. 708.  The ALJ gave specific, germane reasons for the weight given to the statement and substantial evidence supports the finding.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Brief, **ECF No. 10**, is **DENIED**.

2. Defendant's Brief, **ECF No. 14**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 30, 2024.

LONNY R. SUKO
Senior United States District Judge

ORDER - 29